UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 14-CIV-22320-BLOOM/Valle

DAVID WHITWAM,

    Plaintiff,

v.

JETCARD PLUS, INC.,
a Florida corporation,

    Defendant.
_____/

**ORDER DENYING PLAINTIFF'S MOTION TO STRIKE AND GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court upon Plaintiff's David Whitwam's Motion for Summary Judgment, ECF No. [17], and Motion to Strike Affidavit of JetCard Plus, Inc. in Opposition to Motion for Summary Judgment, ECF No. [25]. The Court considers each motion in turn.

**I.      PLAINTIFF'S MOTION TO STRIKE**

In support of its opposition to summary judgment, Defendant JetCard Plus, Inc. ("Defendant") submitted the affidavit of Paul A. Svensen, Jr., CEO of the Defendant entity (the "Affidavit"). *See* ECF No. [23]. Plaintiff David Whitwam ("Plaintiff") seeks to strike the affidavit for failure to comply with Federal Rule of Civil Procedure 56, which provides in its pertinent part that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *See* Fed. R. Civ. P. 56(c)(4); ECF No. [25]. In short, Plaintiff asserts that the Affidavit is a series of impermissible legal conclusions not based on personal knowledge. *See* ECF No. [25]. The Court agrees.

However, Rule 12(f) of the Federal Rules allows a court to strike material in a "pleading" only. *See* Fed. R. Civ. P. 12(f). Rule 7 provides the various forms of pleadings permitted and states that "pleadings" include a complaint, an answer, a reply to a counterclaim, an answer to a cross-claim, a third-party complaint, and a third-party answer. *See* Fed. R. Civ. P. 7(a). Because the Affidavit is not a pleading under the Federal Rules, the Court declines to strike it. *See Riviera S. Apartments, Inc. v. QBE Ins. Corp.*, 2007 WL 2506682, at *1 (S.D. Fla. Aug. 30, 2007) (holding that "because the exhibit that [d]efendant seeks to have stricken is not a 'matter' included in any pleading, it cannot be stricken pursuant to Rule 12(f)"). Nonetheless, to the extent the document contains inappropriate legal conclusions and arguments pertaining to fairness, those arguments will be disregarded. *See Motyl v. Franklin Templeton Co., LLC*, 2014 WL 1413434, at *3 n.3 (S.D. Fla. Apr. 11, 2014) (noting that "[i]t is well settled that an expert 'may not testify as to his opinion regarding ultimate legal conclusions,'" and deciding not to consider an expert's affidavit despite declining to strike it) (quoting *United States v. Long*, 300 F. App'x 804, 814 (11th Cir. 2008)). Additionally, any arguments directly relating to the issue of summary judgment that are contained within Defendant's response in opposition to Plaintiff's motion to strike will not be considered. *See* S.D. Fla. L.R. 7.1(c) ("No further or additional memoranda of law shall be filed without prior leave of Court"). Accordingly, Plaintiff's Motion to Strike, ECF No. [25], is denied.

## II. MOTION FOR SUMMARY JUDGMENT

Plaintiff files the instant Motion for Summary Judgment asserting that he is entitled to a certain refund pursuant to the Contract between the parties. *See* ECF No. [17]. The Court has considered Plaintiff's Motion and accompanying exhibits, Defendant's Response and accompanying affidavit, ECF Nos. [22] and [23], and Plaintiff's Reply, ECF No. [24], and the

record in this case, and is otherwise fully advised in the premises. For the reasons that follow, Plaintiff's motion is granted.

### A. **<u>Factual Background</u>**[1]

On June 23, 2014, Plaintiff filed a one count Complaint against Defendant alleging breach of contract. *See* ECF No. [1]. The purported breach stems from Defendant's purported unwillingness to refund a deposit paid by Plaintiff to Defendant. *Id.* Defendant provides charter passenger jet transportation to individuals wishing to fly on private jets. *Id.* at ¶ 9. In December 2012, Plaintiff entered into an agreement for Defendant's services (the "Contract") wherein Plaintiff paid a $150,000.00 refundable deposit to Defendant. *Id.* ¶ at 11. Upon utilization of Defendant's services, Plaintiff's deposit would be reduced accordingly. *Id.* at ¶ 12. The Contract also contained certain perks, notably, Plaintiff received a $10,000 "flight credit," which was "to be used for Flight time only and has no monetary value," as well as free upgrades: "Client shall be entitled to **<u>unlimited</u>** Light to Mid-Size One-Way upgrades, which shall consist of a single leg, during the term of the Use Period." *See* ECF No. [17] at 3 ¶ 10; ECF No. [1-3] at 2 (emphasis in original). Defendant charges distinct rates for the use of different types of planes. *See* ECF No. [17] at 3 ¶¶ 13-15; *see also* ECF No. [1-3] at 3. Under the terms of the Contract, Defendant charges its clients $3,950 per hour for a flight on a "Light Jet," while a flight on a more substantial "Mid Jet," will run the client $5,100 per hour. ECF No. [1-3] at 3. If

---

[1] Rule 56.1 of the Southern District of Florida's Local Rules dictates that a motion for summary judgment "shall be accompanied by a statement of material facts as to which it is contended that there does not exist a genuine issue to be tried or there does exist a genuine issue to be tried, respectively." S.D. Fla. L.R. 56.1(a). The opposing party is then required to controvert the movant's statement. *Id.* at 56(b). Critically, a party's failure to controvert the movant's statement of undisputed facts results in those facts being deemed admitted, "provided that the Court finds that the movant's statement is supported by evidence in the record." *Id.* Defendant has utterly failed to controvert Plaintiff's statement of material facts. Accordingly, those facts will be deemed admitted so long as the record presented supports them.

3

at any point the client seeks to cancel the Contract, he or she is entitled to the unused portion of his initial deposit, less a 10% "Commitment Fee of the unused Deposit." ECF No. [1] at ¶ 13; *see also* ECF No. [1-3] at 2. Moreover, if the client cancels the Contract prior to depleting half the initial deposit and the client has received upgrades, the flight charges are re-invoiced to reflect a non-upgraded price: "[i]f the Client elects to terminate this Agreement prior to 50% depletion of Deposit, and has exercised upgrades, then upon such termination, all previously received upgrades will be re-invoiced to reflect the standard pricing." *Id.*

On October 18, 2013, Plaintiff took his first flight on Defendant's "Light Jet," a one-way trip which lasted 2.4 hours. ECF No. [17] at 4 ¶ 20; ECF No. [17-2] at 6. Accordingly, Plaintiff was invoiced $10,194.90 for the flight (2.4 hours multiplied by the hourly rate of $3,950, plus a $3.90 "domestic segment fee" and applicable taxes). ECF No. [17-2] at 6. Ten days later, on October 28, 2013, Plaintiff utilized Defendant's services once again, taking another one-way flight lasting 2.8 hours, this time on a Mid Jet. *Id.* at 7. The original invoice states that Plaintiff received a "guaranteed light to mid upgrade," and further notes that the upgrade saved Plaintiff $3,461.50. *Id.* Due to the upgrade, Plaintiff was charged the Light Jet rate of $3,950, despite having flown on a Mid Jet aircraft. Thus, Plaintiff was invoiced a total of $11,960.77 (2.8 hours multiplied by the Light Jet rate of $3,950, plus a domestic segment fee, catering fee, and applicable taxes). *Id.* In February 2014, Plaintiff exercised his right to cancel, and sought the remainder of his deposit, less the aforementioned cancellation fee, totaling $137,844.33. ECF No. [1] at ¶ 14; ECF No. [17] at 4 ¶¶ 25-26. Defendant did not oblige, claiming that Plaintiff's calculation of the refund was incorrect. ECF No. [1] at ¶ 17.

Based on the application of the 10% Commitment Fee and re-invoicing, Plaintiff contends that he is entitled to a refund based on the following calculation:

4

```
      $150,000.00   (Initial Deposit)
  +    $10,000.00   (Flight Credit)
  -    $10,194.90   (October 18th Flight)
  -    $11,960.77   (October 28th Flight)
  -     $3,461.50   (Re-invoiced Flight Upgrade to $5,100/hour Mid Jet Rate)
  =   $134,382.83   (Plaintiff's Unused Deposit)
  -    $13,483.28   (10% Commitment Fee)
  =   $120.899.55   (Total Refundable Amount)
```

*See* ECF No. [17] at 7 ¶ 37.  Plaintiff avers that the $10,000 flight credit can be appropriately applied to the October 18th flight; however, Defendant asserts that because the flight credit "has no monetary value," ECF No. [1-3] at 2, it cannot be considered in the refund calculation. *See* ECF No. [17] at 12. Plaintiff is willing to concede this point in order to avoid further litigation expense and delay. *See id.* at 11-12. Thus, Plaintiff's alternative calculation is:

```
      $150,000.00   (Initial Deposit)
  -    $10,194.90   (October 18th Flight)
  -    $11,960.77   (October 28th Flight)
  -     $3,461.50   (Re-invoiced Flight Upgrade to $5,100/hour Mid Jet Rate)
  =   $124,382.83   (Plaintiff's Unused Deposit)
  -    $12,483.28   (10% Commitment Fee)
  =   $111,944.55   (Total Refundable Amount)
```

*See id.* at 12. However, even with Plaintiff's concessions, Defendant's calculation is noticeably different. *See id*; *see also* ECF No. [17-1] at 5.

Pursuant to Section Five of the Contract concerning the re-invoicing of previously received upgrades, ECF No. [1-3] at 2, Defendant re-invoiced the October 28th flight upgrade to the $5,100 per hour Mid Jet flight rate. *See* ECF No. [17-1] at 4. Additionally, Defendant assessed a three-and-a-half hour "repositioning" fee, thereby increasing the chargeable flight time to 6.3 hours and increasing the total invoice for the October 28th flight to $34,611.02. *See id.* Thus, Defendant contends that Plaintiff is entitled to a refund in the amount of $93,674.68, generated from the following calculation:

|   |              |                           |
|---|--------------|---------------------------|
|   | $150,000     | (Initial Deposit)         |
| + | $10,000.00   | (Flight Credit)           |
| - | $10,194.90   | (October 18th Flight)     |
| - | $34,611.02   | (October 28th Flight)     |
| = | $115,194.08  | (Plaintiff's Unused Deposit) |
| - | $11,519.40   | (10% Commitment Fee)      |
| - | $10,000.00   | (Flight Credit)           |
| = | **$93,674.68** | **(Total Refundable Amount)** |

*See id.* at 5; ECF No. [17] at 12.  While Plaintiff does not dispute that the re-invoicing to the Mid Jet rate was appropriate, *see* ECF No. [17] at 6 ¶ 36, he disputes the imposition of the repositioning fee—a fee totaling $17,850.00—asserting that the Contract makes no reference of any such adjustment.  *See id.* at 12.

Based on the foregoing, it is evident that the parties do not dispute liability in this matter; they agree that Plaintiff is entitled to a refund of some amount.  *See* ECF No. [17] at 2 ¶ 7. Therefore, the only issue presented is one of damages, more specifically, the current dispute centers upon the application of the non-monetary flight credit and the repositioning fee.  *See id.* at 10-14.  Plaintiff contends that the Contract contains no such terms and to the extent it is ambiguous, must be interpreted in his favor as the non-drafter.  *See id.*

### B. <u>Summary Judgment Standard</u>

A party may obtain summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The parties may support their positions by citation to the record, including *inter alia*, depositions, documents, affidavits, or declarations.  Fed. R. Civ. P. 56(c).  An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).  A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S.

at 247-48).  The Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in his favor.  *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.  Further, the Court does not weigh conflicting evidence.  *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Commc'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact.  *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008).  Once this burden is satisfied, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'"  *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'"  *Id.*  (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in his favor.  *Shiver*, 549 F.3d at 1343.  Even "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate.  *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

C. **<u>Discussion</u>**

Defendant avers that summary judgment is impermissible as the parties dispute the definition of "standard pricing" as found in Section Five of the Contract and the applicability of the flight credit. Plaintiff disputes this interpretation. Under Florida law,[2] an ambiguous contract creates an issue of fact that precludes the grant of summary judgment. *John M. Floyd & Associates, Inc. v. First Florida Credit Union*, 443 F. App'x 396, 398 (11th Cir. 2011) (quoting *Talbott v. First Bank Fla.*, 59 So. 3d 243, 244 (Fla. 4th DCA 2011)). However, the interpretation of an unambiguous contract "is a question of law which can be resolved on summary judgment." *Id.* (quoting *PNC Bank, N.A. v. Progressive Emp'r Servs. II*, 55 So. 3d 655, 658 (Fla. 4th DCA 2011)); *Ben–Yishay v. Mastercraft Dev., LLC*, 553 F. Supp. 2d 1360, 1373 (S.D. Fla. 2008) ("Interpretation of a clear and unambiguous contractual provision is a question of law properly decided on summary judgment."). Furthermore, "[w]hether a contract is or is not ambiguous is a question of law to be determined by the trial court." *Ocean Reef Club, Inc. v. UOP, Inc.*, 554 F. Supp. 123, 128 (S.D. Fla. 1982); *See also Centennial Mortgage, Inc. v. SG/SC, Ltd.*, 772 So. 2d 564, 565-66 (Fla. 1st DCA 2000). If it is determined that no ambiguity exists, then the contract is interpreted according to its plain meaning. *Handi-Van, Inc. v. Broward Cnty., Fla.*, 2010 WL 1223776, at *2 (S.D. Fla. Mar. 29, 2010) *aff'd*, 445 F. App'x 165 (11th Cir. 2011) (citing *Anthony v. Anthony*, 949 So. 2d 226, 227 (Fla. 3d DCA 2007)).

"A contract is ambiguous where it is 'susceptible to two different interpretations, each one of which is reasonably inferred from the terms of the contract.'" *John M. Floyd*, 443 F. App'x at 399 (quoting *Frulla v. CRA Holdings, Inc.*, 543 F.3d 1247, 1252 (11th Cir. 2008)). Thus, the critical inquiry is whether the two interpretations are *reasonable* interpretations. *See*

---

[2] The Contract states that it shall be governed by Florida law. *See* ECF No. [1-3] at 4.

*id.* One party's unreasonable interpretation does not create an issue of ambiguity. *See id.* (holding that plaintiff's unreasonable interpretation did not establish that there was an ambiguity in the contract). Where the contract "is susceptible to only one reasonable interpretation, summary judgment appropriately may be awarded." *Wholesale Telecom Corp. v. ITC Deltacom Commc'ns, Inc.*, 176 F. App'x 76, 79 (11th Cir. 2006).

### i. "Standard Pricing" is Unambiguous

According to Defendant, "standard pricing" does not reference the standard rate charged for the non-upgraded flight, but rather, is meant to represent "standard charter industry pricing, which includes a re-positioning fee." *See* ECF No. [23] at ¶ 5. Defendant further asserts that "once the contract is cancelled, then the contractual pricing and benefits are no longer applicable . . . [and] standard non-contractual charter industry pricing applies." ECF No. [23] at ¶ 9. Thus, Defendant appears to contend that once the contract is cancelled, the prices contained in the contract are immaterial and it may charge whatever the "industry price" is at the time, adding any number of "benefits" into the pricing that are otherwise undiscoverable by the client. *See id.* at ¶¶ 4-12. Not only is this assertion illogical under a plain reading of the Contract, but also, this interpretation is seemingly contradicted by Defendant's re-invoicing of Plaintiff's October 28th flight to the *contractual* rate, not an "industry rate," for the non-upgraded flight, albeit including the repositioning fee. The Contract states, "If the Client elects to terminate this Agreement prior to 50% depletion of Deposit, *and has exercised upgrades*, then upon such termination, all previously received upgrades will be re-invoiced to reflect the standard pricing." ECF No. [1-3] at 2 (emphasis added). This language indicates that when a client terminates prior to utilizing more than 50% of the deposit, he or she loses the value of the upgrades.

Defendant seeks to rewrite the contract to state that "all previously received upgrades will be re-invoiced to reflect the standard *industry* pricing." Essentially, Defendant attempts to create a battle of the experts upon the termination of a contract, requiring an examination of the entire charter jet industry in order to determine the manner in which the previously upgraded flights should be re-invoiced. The Eleventh Circuit has noted that an interpretation is not reasonable if it requires a rewriting of the contract. *See John M. Floyd*, 443 F. App'x at 399 (finding that one interpretation was not reasonable where that interpretation "would require inserting words into the [] provision" and holding that, without ambiguity, there was no genuine issue of material fact"); *see also Hill v. Deering Bay Marina Ass'n, Inc.*, 985 So. 2d 1162, 1166 (Fla. 3d DCA 2008) ("As this and many other courts have stated, courts do not rewrite contracts."). There is absolutely no mention of standard "industry" pricing, and most notably, a repositioning fee, in the Contract. As such, the Court declines to read these additional terms into the Contract.

Ultimately, Defendant's reading of the cancellation provision is that if a client cancels prior to utilizing half of the initial deposit, all pricing terms become inconsequential. "[W]here a contract is silent as to a particular matter, courts should not, under the guise of construction, impose on parties contractual rights and duties which they themselves omitted." *See BMW of N. Am., Inc. v. Krathen*, 471 So. 2d 585, 587 (Fla. 4th DCA 1985). Here, the Court declines to grant Defendant the right to impose an indeterminable number of additional fees upon Plaintiff without warning, a possibility created by Defendant's interpretation.[3] Accordingly, Defendant's interpretation of the "standard pricing" position is unreasonable and will not create an ambiguity that would otherwise defeat summary judgment. Based on the plain language of the Contract,

---

[3] The Contract also contains a merger clause indicating that the Contract embodies the full agreement between the parties to the exclusion of any other terms or agreements. *See* ECF No. [1-3] at 2, 4.

standard pricing in the Contract is most clearly read to mean the standard pricing for the upgraded flights actually taken. Where Plaintiff received a free upgrade to a Mid-Jet flight, upon cancellation the flight will be re-invoiced to reflect the non-discounted, non-upgraded rate. Indeed, this was the hourly rate actually charged upon the re-invoicing of the October 28th flight. Defendant was free to define the terms at issue in the Contract's general terms and conditions but failed to do so. For these reasons, summary judgment is granted with respect to the application of the three-and-a-half hour repositioning fee, a charge not mentioned—nor even hinted at—in the written instrument. *See John M. Floyd*, 443 F. App'x at 399 ("Because [plaintiff's] interpretation is unreasonable, it does not establish that there is an ambiguity in the contract. . . . Without ambiguity there was no genuine issue of material fact, and the district court did not err by granting summary judgment on [plaintiff's] breach of contract claim.").

      ii.     *Defendant's Application of the Flight Credit is Unsupported by the Terms of the Contract*

The full terms and conditions pertaining to the flight credit are as follows: "$10,000 FLIGHT CREDIT to be added to the account. This credit is to be used for Flight time only and has no monetary value." *See* ECF No. [1-3] at 2. Like the "standard pricing" clause, the provision at issue here is not ambiguous on its face. Nonetheless, Defendant asserts that the flight credit is to be applied only *after* the exhaustion of the client's entire deposit. *See* ECF No. [23] at ¶¶ 4-5. Again, Defendant implores the Court to read nonexistent terms into the language of the instrument. *See generally Hill*, 985 So. 2d at 1166. As previously noted, one party's unreasonable interpretation of a contract provision will not create ambiguity. *See John M. Floyd*, 443 F. App'x at 399. A plain reading of the Contract indicates that the flight credit shall be

credited to the account.[4] While the Contract does not specifically indicate whether a client may exploit the credit immediately, other than the credit having "no monetary value" and being limited to "use[] for Flight time only," no additional limitations are provided.

Defendant's fundamental argument is that Plaintiff may not apply the flight credit to his initial flight. Plaintiff has conceded this point, see ECF No. [17] at 11-12, and thus, the Court respectfully declines to engage the matter.

Nonetheless, Defendant's calculation of Plaintiff's refund exists contrary to the plain language of the Contract and requires further examination. After eliminating the repositioning fee, Defendant's calculation is as follows:

```
          $150,000       (Initial Deposit)
   +      $10,000.00     (Flight Credit)
   -      $10,194.90     (October 18th Flight)
   -      $11,960.77     (October 28th Flight)
   -      $3,461.50      (Re-invoiced Flight Upgrade to $5,100/hour Mid Jet Rate)
   =      $134,382.82    (Plaintiff's Unused Deposit)
   -      $13,438.28     (10% Commitment Fee)
   -      $10,000.00     (Flight Credit)
   =      $110,944.55    (Total Refundable Amount)
```

See ECF No. [17-1] at 3. Although it has thoroughly denied the contention that Plaintiff may apply the flight credit to the initial flight, Defendant does just that, but then subtracts the flight credit from the otherwise refundable total after calculating the cancellation fee. Under this calculation, Defendant obtains a $1,000 windfall by applying the 10% cancellation fee to not only the remaining deposit, but also the flight credit. This leads to the obvious question -- if the credit has no monetary value, why is the client penalized for receiving it? The logical reading of the flight credit provision requires the credit to be subtracted from the deposit *prior to* determining the total unused deposit, which is then subject to the cancellation penalty:

---

[4] Indeed, the flight credit was immediately added to Plaintiff's account. *See* ECF No. [17-2] at 8 (containing Plaintiff's initial invoice dated December 19, 2013).

12

```
        $150,000.00   (Initial Deposit)
    +    $10,000.00   (Flight Credit)
    -    $10,194.90   (October 18th Flight)
    -    $11,960.77   (October 28th Flight)
    -     $3,461.50   (Re-invoiced Flight Upgrade to $5,100/hour Mid Jet Rate)
    -    $10,000.00   (Flight Credit)
    =   $124,382.83   (Plaintiff's Unused Deposit)
    -    $12,483.28   (10% Commitment Fee)
    =   $111,944.55   (Total Refundable Amount)
```

By removing the flight credit prior to the imposition of the cancellation fee, the total refundable amount eliminates the effect of the flight credit and yields a result where the flight credit has "no monetary value." Furthermore, Defendant's method of calculating the total refundable amount is contrary to the cancellation provision itself, which provides that the 10% cancellation fee shall be applied to the unused portion of the "Deposit," not the account itself. *See* ECF No. [1-3] at 2. Therefore, Defendant's reading is contrary to both the language of the flight credit clause indicating that the credit has no monetary value, as well as the cancellation provision. Defendant's calculation is not "reasonably inferred" from the instrument's terms and is therefore insufficient to defeat summary judgment. *See John M. Floyd*, 443 F. App'x at 399. The provisions of the Contract are unambiguous and the terms "no monetary value" necessitate the aforementioned result.[5]

### III.   CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff's interpretation incorporates the plain meaning of the Contract. Being fully advised, it is hereby **ORDERED and ADJUDGED** as follows:

1. Plaintiff's Motion to Strike, **ECF No. [25]**, is **DENIED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. [17]**, is **GRANTED**.

---

[5] The Court reiterates that it is withholding opinion on whether a client may apply the flight credit to an initial flight under the terms of the Contract as Plaintiff has conceded this point.

3. The appropriate value of Plaintiff's refund is $111,944.55.

4. Judgment for the amount stated will be entered by separate order.

5. To the extent Plaintiff's Motion seeks additional relief, those requests are denied. Plaintiff may file the appropriate motion.

**DONE and ORDERED** in Fort Lauderdale, Florida, this 30th day of October, 2014.

_____
BETH BLOOM
UNITED STATES DISTRICT JUDGE

Copies to:
Counsel of Record